Next case on for argument is U.S. v. Taylor and Mizell. Great. And we'll hear him through the speaker system. Sure. Thanks, Mr. Volkel. And if he would like to go first, I'm fine with that. Make sure he understands. I think it might help if you go first. That's fine. I'm fine either way.  Some of your arguments, well, obviously different. Hello. Good morning, Mr. Sorondo. Yes, your honor. Hello. Hello. Yes. Can you hear us okay? Yes, I can. All right. Just talk in a normal voice. Try it one more time. Is that normal enough? Sounds good. I think all of us on the bench can hear and everybody in the courtroom can hear you. So we're going to have Mr. Volkel argue first, and then you will follow. Thank you, your honor. Thank you. And I'm sorry you're not here with us, but we certainly understand. Thank you. Mr. Volkel. Good morning, your honors. I represent Amar Taylor in this appeal. And of all the people on the long list on the cover of the briefs, my client got the longest sentence by far. And he was not the worst guy. He was not the most culpable overall. And he didn't deserve the longest sentence overall. In our view, that makes the sentence substantially unreasonable. Appellant, my client, Taylor, in this shooting was a tool, not unlike the gun. I mean, obviously he had more awareness than the gun. But still, he was a tool who was pointed in the direction of this crime by the leaders of the conspiracy. The conspiracy sentences, if you look at them alone, show who the worst actors were in this conspiracy. Despite that. So are you saying it was abuse of discretion for the district court to rely so heavily on the shooting of the three people, including one quadriplegic? Was that an abuse for the district court to say, well, that's the principal reason why this person is getting the extra five years? Well, I think what it is is it creates a disparity in sentencing. And I think that to rely that heavily on something that's heavily influenced by chance is wrong. I mean, I think while this isn't the situation, I think an extreme example is in order. And if you had three shooters with assault rifles and Mr. Taylor with a Derringer going for one bullet, and his bullet happened to be the one that did the most damage, I don't think anybody would say he was the worst actor in that bunch. I think to rely on that exclusively is wrong. And clearly he did a bad thing, and it had a bad result. I know you said that that was an extreme example, but pare that back down to what occurred here. I mean, what occurred here? Why are the other people worse or equally bad so that he should not have received the sentence that the district court gave him? Again, we have to acknowledge that he was not a leader, and he didn't say, I think it's a great idea to go shoot people. Somebody else, the leaders of the conspiracy, said, we have to go there and shoot people for whatever reason. And those people- And your client took a gun. My client took a gun and fired a shot, and somebody was severely injured. There's no question about that. And I'm certainly not arguing that he's innocent or abused in general by the system. But we do have to look for sentencing disparities, and I think there is one here. Well, there's certainly a disparity in the length of the sentences. There is a difference in the outcome of the shooting. The factors to be considered under 3553A include promoting respect for the law and general deterrence as well as individual deterrence. Why is it illegitimate for a court to think about public messaging in the way it deals with actions that have catastrophic effects? It's not illegitimate at all, but those catastrophic events are more on the slate of the leaders of the conspiracy who set them in motion than on my client, who, again, was a tool in the process, not the person who decided that this had to happen, not the person who said, here's a gun, go do it. So we review this for abuse of discretion, right? Yes. I mean, that's our jurisprudence. What is the message that we send back to judges on the district court in a similar situation? I mean, what do we tell them that this is why you exceeded the bounds of your discretion in this particular case? Because we put everything on the one person who had a role in it, but not the key role. He's got a sentence that, with one exception, is double on that count, the sentence that anybody else got. He got 10 years, everybody else who had a gun charge in this entire conspiracy got five, except for one person who got six. I mean, why can't the district court conclude that he exercised his free will? I mean, he was told to go do something, but ultimately he went out and did it. Right, he did. But, again, this sentence is for the gun offense. He didn't plead to the shooting itself. He didn't plead to an attempted murder. We're looking at a conspiracy and gun charges. And the combination of those things, he has by far the most severe sentence. And the leaders were also participants in this same shooting and other shootings that my client wasn't part of. So there is definitely a disparity here. We have not even touched the disparity with national sentences. If you look at the statistics, and I don't remember the exact numbers, but an enormous majority of people receiving sentences on these gun charges get the minimum for that particular charge, which in this case was five years. Getting double the minimum is well into the single digits. Your red light has been on for a little bit here, and you've reserved two minutes for rebuttal. Great, thank you, Mr. Foucault. Is it Sirondo or Chirondo? Sirondo, Your Honor. All right, Mr. Sirondo. Yes, John Sirondo from Syracuse, New York, on behalf of the appellant Kevin Mizell. I'd apologize, Your Honor, for what happened this morning, and I thank you for the opportunity to participate. This is an appeal from a conviction for racketeering conspiracy and possession of a firearm with 60 months and 60 months consecutive. The issue I'd like to discuss initially relates to the determination of the guidelines in regard to my client's sentence. As the court is aware, the plea agreement came up with a 25-point total, level one, which gave you 57 to 71 months. The pre-sentence report, however, correctly indicated that there was a double counting of the five points for discharging a firearm and reduced the guideline calculation to 20, which would give you a level one, 33 to 41 months. The government, I guess realizing the mistake in the plea agreement, had a letter on July 1st of 2015, which again came up with a base level of 25 points. We submit that it was incorrect to determine the range and then fit it into the guidelines, since the court is supposed to apply the guidelines to determine the range. What was the error ultimately? There wasn't one, was there? The error would be that the range should have been 33 to 41 in regard to what was laid out in the plea agreement, because the plea agreement was incorrect. It is ultimately the court's responsibility to make a correct guidelines determination, and there were facts admitted in the plea allocution and otherwise in the record that supported the plea computation of the probation department that the court ultimately used. Isn't that correct? Slightly correct, Your Honor, because the court was concerned at the sentencing that the three acts that he used to back into the guideline calculation were not mentioned in the plea agreement or in the pre-sentence report. Was there an objection to the recalculation by defense counsel? There was no objection to the recalculation, no. So we're reviewing it for plain error? Right, plain error as the court did in the key, if I'm pronouncing it right, we cited that in our brief. Obviously it was clear and obvious, it was plain, it affected that we submit the defendant's substantial rights because it went from 117 to 131 as opposed to what we think it should be of 93 to 101, and it seriously affects the fairness, integrity, and public reputation of the proceeding. And due to that incorrect calculation, we submitted to unfair to enforce at this point the waiver, which was based on an incorrect calculation. And if we apply the basic contract rules to the pre-sentence report, I'm sorry, the plea agreement, which can only be modified in writing and signed by the parties, obviously the quote, the agreement at sentencing was not signed by all parties or the letter, the government's letter as well. So we submit that the waiver would be ineffective based on this record. The plea agreement at page 234 of the record provides that it is understood that neither the probation office nor the court is bound by the guideline stipulation in the plea agreement, either as to questions of fact or as to the determination of the proper guidelines to apply to the facts, and that the parties reserve the right to answer inquiries and make all appropriate arguments concerning the same. And so unless you're saying that the court's determination and the probation department's determination were inconsistent with or unfounded in the record, how is the court making its own computation that is different from the one set forth in the plea agreement inconsistent with the court's authorities and responsibilities or indeed even inconsistent with the plea agreement? I think it's a basic, with all due respect, it's a basic disconnect from the manner in which sentences to be determined. The sentence is to be determined by applying the guidelines to give you a range. The table then gives you a level where you determine your range. I'm a little puzzled. Let me ask you this. I'm a little puzzled. What was wrong with the recalculation? The five-level enhancement for discharging a weapon had been removed because of the 924C mandatory minimum. What was wrong with the recalculation, that he was a leader and organizer? What do you claim? No, it was the manner in which the court did it. But what about the result of it? Do you challenge that? The court basically said, what do I have to do to maintain 131 months? And we submit that the court should have considered, applied the guidelines first rather than trying to fit the guidelines to a prearranged number. It was a below guideline sentence, too, wasn't it, for that portion of it, the first 60 months? The range was 123 to 138. The sentence was 120 months with a 60-months mandatory minimum for the gun. Yes, Your Honor, it was. The methodology is what striked me as being unusual. All right. Mr. Sirondo, your red light is on. We've given you a few, half a minute more. And you've reserved two minutes for rebuttal. So stay on the line, please. And we will hear from Mr. Gerber for the government. Does the podium come up anymore, Mr. Gerber? You're good? May it please the court, my name is Michael Gerber. I'm an assistant U.S. attorney in the Southern District of New York. I represent the government on appeal. And the government asked the court to affirm the judgments of conviction in this case. The defendants raised several claims on appeal, and we believe those claims should be rejected. Turning first to Defendant Taylor, the Appellant's Counsel argued or suggested that Taylor was a tool in the shooting. That is not accurate. He was not a tool at all. He volunteered. He volunteered to go do the shooting. He was not forced to do it. He was not paid to do it. He was not coerced in any way. This is not a situation in which someone, a leader of a gang, took advantage of a member of the gang who was particularly vulnerable in some way. This is not a situation in which the leader of a gang was targeting some particular rival. Yes, a leader of the gang asked for a volunteer to go shoot at a rival gang. And Taylor effectively raised his hand. He chose to go. He took the gun. He went and shot. He shot. He hit three individuals. One of them is paralyzed for life. And in thinking about sentencing, of course, of course, in part, someone's intent matters and their conduct matters. But consequences matter, too. That, we respectfully submit, is a bedrock principle of criminal law, federal criminal law. We give examples in our brief of various contexts in which the criminal law and criminal sentencing distinguishes based solely on the consequences, the difference between attempted murder and a completed murder. There is no difference in intent or even in conduct. The only difference is the consequence, and that can result in a dramatically different sentence. Here, he hit three individuals. One of them, tragically, is paralyzed for life. We respectfully submit that, of course, of course the district court can consider that. Of course that is a very significant aggravating factor and is highly relevant under 3553A. We believe there is no error here at all in imposing the sentence that the district court imposed. But certainly, at the very least, there was no abuse of discretion here. Turning to Defendant Mizell. So in Mizell's opening brief, he suggests that the error was, the error of sentencing was the five-level adjustment under the guidelines for discharge of a firearm. In his reply brief, he acknowledges that that, in fact, was not an error, that the district court corrected for that, did not make that mistake. And then in Mizell's reply brief, he appears to raise some sort of new challenge to the guidelines calculation. To the extent it is some new argument, it's raised for the first time in the reply brief and it is waived. We are not clear on exactly what he is claiming. He concedes repeatedly in the reply brief that he agreed to the corrected final guidelines range. There is no dispute about that. And in fact, on the record at sentencing, one or two minutes into the sentencing, Judge Sullivan asked, are there any objections to the revised calculation? Defense counsel said no. And here you have a situation in which the government and defense counsel agreed on a revised guidelines calculation. There is no dispute about that. It was an agreement among the parties. The district court then adopted that guidelines calculation and then proceeded to impose sentence. To the extent counsel is suggesting that Judge Sullivan wanted to get to a number and backed into a number in terms of the guidelines range, that is not accurate. That is not reflected in the sentencing transcript at all. And this is a situation in which defense counsel and the government agreed on a range. And then now for the first time on appeal, for the first time on appeal, defense counsel is saying, oh, this is somehow inaccurate or illegitimate or unfair in some way. That argument cannot be, whether it's through waiver or it's through estoppel or it's through invited error. There are any number of doctrines that prevent any counsel, including defense counsel, from adopting something in the district court, affirmatively adopting it, and then saying on appeal, oh, that's no good. So it's not a question we would submit of being reviewed for plain error. We think defense counsel cannot make this argument. We think Biesel cannot raise this argument now on the first time on appeal, having embraced this in the district court. He has precluded, through any one of a number of doctrines, he has completely precluded from now saying for the first time, this is no good. Unless the panel has any further questions, we rest. It seems almost like an involuntary plea situation where he said, I'm entering this plea. I know the guidelines are not binding on the court, but this is the number we've agreed on, the government and I. And then enters his plea. Later on, everybody agrees that the number was right, the final number of the offense level, but that the way of calculating it was different. It seems like it's almost like I would not have entered that plea if I had known that the calculation would have been different, even though the outcome was the same. That seems to be the argument, isn't it? Well, to the extent that is the argument, Your Honor, that revised guidelines calculation, that final guidelines calculation, the calculation that was adopted by the district court, that was agreed upon by the parties. The agreement between the government and defense counsel was memorialized in the government sentencing submission, on which defense counsel was copied. And then at the beginning of the sentencing, Judge Sullivan, fully aware of these revised calculations that ended up in the same exact range, asked defense counsel any objections to this. And the answer was no. So it's not just, the agreement here was not just about the range. Even the calculations of how you get to that range were agreed to by defense counsel before the district court. Unless there are any further questions, we rest on our brief. Thank you. Thank you, Mr. Gerber.  Thank you, Your Honor. Even if we take as true everything that counsel said, my client is still not the worst person in this conspiracy. And nationally, he's certainly not one of the worst gun offenders ever in the country. And giving him double the minimum makes him that as far as sentencing goes. And to try to finish answering your question about the message to district courts, I think the message is that consistency in sentencing is important, and avoiding big disparities is critical. I think that the analogy to attempt and succeeding in a murder is also a false one in this case, because that's not what's being compared here. What's being compared is two people whose conspiracy had the exact same result. It's not a question of whether you succeeded or not, because the success attributes both to the leaders of the conspiracy and the person who carried it out. So that's not really a relevant distinction in this case. There was a bad result, but it's not all on my client. It's more on the people who set the whole thing in motion. They're the ones who ultimately caused it. My client did not . . . I'm sorry? Is that what we try in some crafted opinion to impart to the district court? When you have a conspiracy and you've got somebody at the low end, I think is your argument, who's volunteered, as the government will put it, to do a particular job, you've got to keep that person's sentence closer to that of the leaders of the conspiracy? Within range. And what is within range? Well, I think that can't be the only thing that you look at, or even the most important thing. I think you have to look at the conspiracy as a whole, look at the culpability of all the people for what happens, and not single out somebody who, yes, caused the most harm, but that was a matter of chance. Thank you. Thank you, Your Honor. Thank you very much. Mr. Sarando, you have two minutes for rebuttal? Briefly, I believe I misanswered one of the questions for one of the panel. The question was, I believe, whether the sentence was a below-guideline sentence that was imposed on the first count, and I think I said it was, but it wasn't. I think the range was 57 to 71, and he got 60, so it was not below-guideline, but it was at the lower end. Other than that, we'll rely on our brief. Okay. Thank you very much, and thank you for participating by phone. We're happy to have you with us that way. Thank you for giving me the opportunity. The court will reserve decision in this matter, and thank counsel for being present.